| | |
|---|---|
| 1 | JOSHUA OSBORNE-KLEIN (WSB #36736) |
| 2 | KRISTEN L. BOYLES (CSB #158450)<br>Earthjustice |
| 3 | 705 Second Avenue, Suite 203<br>Seattle, WA  98104 |
| 4 | (206) 343-7340<br>(206) 343-1526 *[FAX]* |
| 5 | josborne-klein@earthjustice.org<br>kboyles@earthjustice.org |

SHELLEY DAVIS (CSB #84539)
VIRGINIA RUIZ (CSB #194986)
Farmworker Justice
1126 – 16th Street, N.W., Suite 270
Washington, D.C.  20036
(202) 293-5420
(202) 293-5427 *[FAX]*
sdavis@nclr.org
vruiz@nclr.org

*Attorneys for Plaintiffs*

*[Complete list of parties on signature page.]*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

UNITED FARM WORKERS, PESTICIDE ACTION NETWORK NORTH AMERICA, PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, BEYOND PESTICIDES, TEAMSTERS LOCAL 890, FARM LABOR ORGANIZING COMMITTEE, AFL-CIO, and LUIS GARCIA LOPEZ,

    Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

    Defendant.

Case No.  CV08-3595-SBA

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1.  This is an action for declaratory judgment and injunctive relief concerning the pesticide diazinon. It arises under and asserts violations of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y.[1]

2.  Diazinon is a toxic organophosphate pesticide. The American public, including infants and children, are exposed to diazinon that drifts in the ambient air following application and contaminates food and drinking water. Farmworkers are additionally exposed to diazinon when they mix, load, or apply the pesticide in fields or re-enter treated fields after application. Diazinon contaminates the environment and poisons wildlife including threatened and endangered species.

3.  The United States Environmental Protection Agency ("EPA") has recognized that diazinon uses pose considerable risks to farmworkers and wildlife. However, without completing the required ESA consultations, EPA determined that diazinon uses are eligible for reregistration under FIFRA because the benefits outweigh the risks. In reaching this reregistration determination, EPA failed to put the burden of proving reregistration eligibility on the pesticide registrants and, instead, relied on incomplete and inaccurate risks and benefits assessments that significantly understate the risks of diazinon uses and exaggerate the benefits of the pesticide.

4.  Plaintiffs seek a judgment declaring that EPA acted arbitrarily, capriciously, and in violation of FIFRA in determining that diazinon was eligible for reregistration and in maintaining the registrations for diazinon. Plaintiffs also seek an injunction that (1) requires EPA to make new reregistration eligibility decisions for diazinon based on a balancing of risks and benefits under FIFRA's unreasonable adverse effects standard that fully incorporate the health, environmental, economic, and social risks and benefits of each diazinon use; (2) prohibits

---

[1] On May 27, 2008, plaintiff Beyond Pesticides sent a 60-day notice of intent to sue EPA for an additional violation of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, which EPA received on June 2, 2008. Unless EPA takes steps to correct its illegal actions, plaintiffs will amend this complaint to add a claim for a violation of the ESA upon expiration of the mandatory 60-day period.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -2-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  EPA from reregistering uses of diazinon unless the pesticide registrants prove that the benefits of
2  the pesticide use outweigh the specific risks associated with that use; and (3) imposes interim
3  protective measures to prevent harm to farmworkers, children, other bystanders in agricultural
4  communities near areas where diazinon is used until EPA brings its diazinon registrations into
5  compliance with the law.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

7   5.  This action is brought pursuant to section 16(a) of FIFRA, 7 U.S.C.§ 136n(a).
8  This Court has jurisdiction pursuant to 7 U.S.C.§ 136n(a), and 28 U.S.C. § 1331.
9   6.  Venue is properly vested in this Court under 28 U.S.C. § 1391(e) as a number of
10  the plaintiffs reside in this district and many of the consequences of the defendant's violations of
11  the law giving rise to the claims occurred or will occur in this district.
12   7.  This case is properly assigned to the San Francisco/Oakland Division under Civil
13  L.R. 3-2(c) because at least one of the plaintiffs is located in San Francisco County.

## PARTIES

15   8.  The plaintiffs in this action are:
16   A.  United Farm Workers ("UFW"), the nation's oldest and largest farmworker
17  membership organization.  UFW is headquartered in California and serves farmworkers in
18  offices all across the country including offices in Salinas and Santa Rosa, California.  UFW has
19  represented farm workers for more than 40 years and currently has more than 27,000 members,
20  many of whom are migrant and seasonal farmworkers.  UFW's mission is to protect and expand
21  farmworkers' labor rights, including rights pertaining to health and safety issues.  UFW works to
22  protect the health and safety of farmworkers from occupational injuries, including injuries
23  caused by exposure to diazinon and other pesticides.
24   B.  Pesticide Action Network North America ("PANNA"), a San Francisco-based
25  non-profit organization that serves as an independent regional center for Pesticide Action
26  Network International, a coalition of over 600 public interest organizations in more than 90

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   -3-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

countries. For more than 20 years, PANNA has worked to replace hazardous and unnecessary pesticide uses with ecologically sound pest management across North America. PANNA provides scientific expertise, public education, and access to pesticide data and analysis, policy development, and other support to its approximately 225 member organizations. PANNA has approximately 2,700 individual members nationwide and approximately 90 organizational members in California alone. PANNA's U.S. membership includes a number of groups who directly represent or advocate on behalf of farmworkers and whose membership includes farmworkers and persons living on or near farms. PANNA submitted comments to EPA on the 2006 organophosphates cumulative risk assessment and the 2002 interim reregistration eligibility decision for diazinon.

      C.      Pineros y Campesinos Unidos del Noroeste (Northwest Treeplanters and Farmworkers United or "PCUN"), based in Woodburn, Oregon, the state's only union of farmworkers, nursery, and reforestation workers. Its mission is to establish better working and living conditions for its members, who work on crops treated with diazinon, and live in communities where this pesticide drifts and is tracked in following application.

      D.      Beyond Pesticides, a nonprofit membership organization that serves a nationwide network of individuals and groups working to increase the safe use of pesticides and reduce or end the use of dangerous chemicals such as diazinon. Beyond Pesticides is based in Washington, D.C., and has more than 2,000 individual and organizational members in California and other states. The organization advocates on behalf of farmworkers, individuals, and communities exposed to pesticides such as diazinon and also seeks to protect wildlife and ecosystems from the harmful effects of diazinon and other pesticides. Beyond Pesticides' primary goal is to assist individuals and organizations in identifying the hazards of pesticides, providing information on safer alternatives, and promoting policy changes that increase the protections to humans and the environment from dangerous pesticides. Beyond Pesticides has long campaigned for more stringent regulation of diazinon. For example, on December 17, 2002, Beyond Pesticides submitted comments that critiqued the EPA's diazinon interim reregistration decision. Beyond

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -4-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

Pesticides has also published fact sheets on the dangers of diazinon and has orchestrated public letter writing campaigns urging EPA to cancel diazinon uses.

  E. Teamsters Local 890, a union founded in 1943 that represents approximately 10,000 workers in California and Arizona, including 2,000 agricultural workers in the Salinas Valley, Oxnard area, Huron area, and Imperial Valley in California, as well as the Yuma area of Arizona. The Union negotiates contracts to improve the members' wages and working conditions and works to protect its members from pesticide exposures and provide health care to farm workers and their families. Local 890's members include workers who have harvested and will continue to harvest vegetables treated with diazinon. Local 890's members and their families also live and go to school in areas where diazinon drifts and settles.

  F. Farm Labor Organizing Committee, AFL-CIO ("FLOC"), a national union that represents migrant and seasonal farmworkers. It was founded in 1968 and is based in Toledo, Ohio. FLOC's mission is to organize farmworkers so that they can secure more power to improve their working conditions, including reducing their exposure to pesticides. FLOC currently has approximately 12,000 members in Ohio, Michigan, North Carolina, and Virginia. FLOC members work with many crops that are registered to receive diazinon treatments, including apples, blueberries, cucumbers, onions, peppers, potatoes, strawberries, and tomatoes.

  G. Luis Garcia Lopez, an individual farmworker who has supported himself and his family for many years by working in agricultural fields in California. He has been exposed to diazinon and other pesticides while working in and around fields in Monterey County. Mr. Lopez plans to continue working in agriculture and is at risk of future exposure to diazinon and other pesticides.

  9. Plaintiffs have been and will continue to be injured when their members mix, load, and apply diazinon for agricultural purposes; prune, thin, or harvest crops that contain residues of diazinon; and work or live in areas where diazinon drifts and settles. Every year, plaintiffs' members are exposed to diazinon at levels that may cause poisoning. The continued exposure of the plaintiffs' members to the harmful effects of diazinon are a direct result of EPA's

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -5-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1  decisions to reregister diazinon uses.

2      10.    Plaintiff Beyond Pesticides and its members live, use, and recreate in areas near where diazinon is applied or where diazinon has traveled.  Beyond Pesticides and its members have professional, economic, aesthetic, and recreational interests that have been and will continue to be injured by the reregistration of diazinon uses and the impacts that this pesticide has and will continue to have on beneficial insects and threatened and endangered species.

    11.    The past, present, and future enjoyment of these interests by plaintiffs and their members have been, are being, and will continue to be irreparably harmed by EPA's disregard of its statutory duties and by the unlawful injuries imposed on farmworkers, children and other bystanders, and the environment.

    12.    The aesthetic, conservation, recreational, commercial, and scientific interests of plaintiffs and their members in minimizing harm to people and the environment from the use of diazinon, as well as in the compliance with environmental law by federal agencies, have been, are being, and, unless the relief prayed for is granted, will continue to be directly and adversely affected by the failure of defendants to comply with the law.

    13.    The defendant in this action is the United States Environmental Protection Agency, an agency of the United States charged with registering and reregistering pesticides under FIFRA and with ensuring that the authorized pesticide uses will not pose unreasonable risks to humans or the environment.

## BACKGROUND

I.    STATUTORY FRAMEWORK FOR REGISTERING AND REREGISTERING PESTICIDES

    A.    <u>Federal Insecticide, Fungicide, and Rodenticide Act Requirements</u>

    14.    FIFRA establishes a registration scheme for pesticides.  Under FIFRA, a pesticide may generally not be sold or used in the United States unless it has an EPA registration for a specified use.  7 U.S.C. § 136a(a).  To register or reregister a pesticide, EPA must determine that:

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -6-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

(A)     its composition is such as to warrant the proposed claims for it;
(B)     its labeling and other material required to be submitted comply with the requirements of this Act;
(C)     it will perform its intended function without unreasonable adverse effects on the environment; and
(D)     when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

Id. § 136a(c)(5).

15. FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide . . . ." Id. § 136(bb). In order for EPA to register or reregister a pesticide use, it must find that the use will not pose any unreasonable adverse effects because the benefits of the pesticide uses outweigh the risks.

16. FIFRA also defines "unreasonable adverse effects on the environment" to include any human dietary risk that is not "safe" under the Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301-394, as amended by the Food Quality Protection Act ("FQPA"), Pub. L. No. 104-170, 110 Stat. 1489 (1996). 7 U.S.C § 136(bb). The FFDCA, as amended, defines "safe" as "a reasonable certainty that no harm will result from aggregate exposure to the pesticide residue, including all anticipated dietary exposures and all other exposures for which there is reliable information." 21 U.S.C. §§ 346a(b)(2)(A)(i)-(ii).

17. The culmination of the registration process is EPA's approval of both a registration and a label for the particular pesticide use. FIFRA makes it unlawful to use a pesticide in a manner inconsistent with the label, 7 U.S.C. § 136j(2)(G), or to make any claims that differ substantially from the label, id. § 136j(1)(B).

18. EPA has the authority to cancel a pesticide registration whenever the "pesticide or its labeling or other material required to be submitted does not comply with the provisions of [FIFRA] or, when used in accordance with widespread and commonly recognized practice, generally causes unreasonable adverse effects on the environment . . . ." Id. § 136d(b).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    -7-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

19.     EPA separately categorizes and assesses risks to farmworkers, children and bystanders (non-occupational risks), and wildlife.  For farmworker risks, EPA typically uses a methodology that combines exposure estimates, toxicity assessments, and uncertainty factors to determine whether a particular pesticide use poses a "risk of concern" to farmworkers, which it has also called an "unacceptable risk."  When EPA determines that a pesticide use presents a risk of concern to farmworkers, it generally prescribes mitigation measures including use of personal protective equipment (such as chemical resistant clothing and respirators), and engineering controls (such as closed pesticide mixing, loading, and application systems designed to reduce contact with the poisons).

20.     For children and bystanders, both FIFRA and the FFDCA require EPA to evaluate potential exposures from dietary sources and from other non-occupational routes.  EPA generally uses the "reasonable certainty of no harm" standard set forth in the FFDCA to assess dietary risks to children and bystanders; however, EPA typically does not consider or assess the risks to children and bystanders from exposure to pesticides that drift into communities following application under either the FIFRA or FFDCA standard.

21.     For wildlife, EPA typically establishes ecological risks of concern based on laboratory toxicity studies and environmental fate modeling.  When EPA identifies a risk of concern for wildlife, the agency sometimes prescribes mitigation measures including no-application buffer zones around sensitive areas, reductions in permitted number of seasonal applications, and reductions in maximum application rates.

22.     Under FIFRA's risk-benefit standard, EPA cannot allow pesticide uses that result in human or ecological risks to persist unless the pesticide registrant proves that, considering all risks and benefits, the benefits of the pesticide use outweigh the risks.

23.     EPA has no regulation or policy establishing a uniform process for assessing the benefits of pesticide uses that pose risks of concern to humans and/or wildlife.  Expert bodies, such as the National Academy of Sciences, have recommended that EPA develop such a policy to avoid arbitrary and unprincipled risk-benefit decisionmaking under FIFRA.  In the absence of

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -8-

1  such a regulation or policy, EPA staff compiles information on the risks and benefits of
2  pesticides on an *ad hoc* basis.

3  II.     DIAZINON

4          A.      History and Usage

5          24.     Diazinon is an organophosphate insecticide that was first registered for use in
6  1956. Like other organophosphate pesticides, diazinon originates from nerve gases developed by
7  the Nazis during World War II.

8          25.     Today, diazinon is one of the most widely used organophosphate insecticides in
9  the United States. EPA estimates that total annual domestic usage of diazinon was over 13
10 million pounds of active ingredients between 1987 and 1997. Diazinon is currently registered
11 for use on a wide variety of crops including almonds, apples, apricots, beets, beans, blueberries,
12 broccoli, Brussels sprouts, cabbage, caneberries, carrots, cauliflower, celery, chard, cherries,
13 collards, cranberries, cucumbers, endive, figs, filberts, ginseng, kale, lettuce, melons, mustard
14 greens, nectarines, onions, ornamentals, parsley, parsnips, peaches, pears, peas, peppers,
15 pineapples, plums, potatoes, prunes, radishes, rutabagas, strawberries, spinach, tomatoes, trunk
16 wraps, turnips, and watercress.

17         26.     In 1989, FWS issued a biological opinion for the then-registered diazinon uses.
18 FWS determined diazinon jeopardized 84 threatened and endangered aquatic species and four
19 listed avian species. Diazinon IRED at 31. FWS prescribed mitigation measures to avoid
20 jeopardizing such species. Diazinon IRED at 31. On information and belief, EPA never
21 implemented the mitigation prescribed in the 1989 biological opinion. Diazinon IRED at 32.

22         27.     Pursuant to court orders, EPA has begun to initiate ESA section 7(a)(2)
23 consultations on the effects of diazinon on listed salmonid populations, the California red-legged
24 frog, and the Barton Springs salamander. However, EPA has allowed diazinon uses to continue
25 that may affect those species even though the ESA consultations are not complete.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF   -9-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

B.    Toxicity and Environmental Fate

28.    Diazinon is toxic to humans.  Like other organophosphates, diazinon causes systemic illnesses by inhibiting the ability to produce cholinesterase, an enzyme necessary for the proper transmission of nerve impulses.  Symptoms of cholinesterase inhibition include muscle spasms, confusion, dizziness, loss of consciousness, seizures, abdominal cramps, vomiting, diarrhea, cessation of breathing, paralysis, coma, and death.  Scientific studies also associate diazinon exposures with several other ailments including endocrine disruption, birth defects, nerve damage, liver damage, asthma, gestational diabetes, and non-Hodgkin's lymphoma.

29.    Diazinon has both lethal and sub-lethal effects on wildlife.  Birds, particularly grazing fowl like ducks and geese, are highly susceptible to diazinon poisoning, and diazinon has been linked to hundreds of reported bird kills.  Indeed, according to EPA's Ecological Incident Information System, diazinon has caused the second largest number of total known incidents of bird mortality of any pesticide.  Diazinon is also lethal to aquatic life and, according to peer-reviewed studies, low concentrations of diazinon in surface water can have sub-lethal effects on fish, including impairment of homing ability, reproduction, and predator avoidance.

30.    Diazinon is semi-volatile and can become airborne after application.  It has been detected in the air near schools and homes in agricultural communities.  For example, air monitoring conducted by the California Air Resources Board in 1998 found detectable levels of diazinon in the air at schools and other monitoring sites in Fresno County, California.  A 2006 monitoring study PANNA conducted at the South Woods Elementary School in Hastings, Florida, detected diazinon at quantities exceeding levels-of-concern for young children that were derived from EPA data.

31.    Diazinon is also frequently detected in surface waters. According to EPA, "[d]iazinon was the most frequently detected insecticide in surface water monitoring studies . . . ."  Diazinon IRED at 11.  Numerous waterbodies are listed as impaired pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d), due to contamination of diazinon from

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -10-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

agricultural sources.

      C.     EPA's Reregistration Eligibility Decisions

     32.     EPA issued an interim reregistration eligibility decision for diazinon on July 31, 2002 ("Diazinon IRED"), which it revised on May 13, 2004 ("IRED Revision"). In those decisions, EPA identified many "risks of concern" to farmworkers and wildlife resulting from diazinon uses and prescribed mitigation to reduce these risks, including use of personal protective equipment (such as chemical resistant clothing and respirators), use of engineering controls (such as closed pesticide mixing, loading, and application systems designed to reduce contact with the poisons), use restrictions, and reductions in maximum application rates. EPA acknowledged that such mitigation would not eliminate the risks of concern to farmworkers and wildlife but nonetheless concluded that such uses were eligible for reregistration under FIFRA.

     33.     Specifically, EPA found that all diazinon mixing, loading, and application scenarios presented "unacceptable" risks of concern to farmworkers, even if EPA required use of personal protective equipment. Diazinon IRED at 18. And even with implementation of engineering controls, EPA found that 118 of the 136 short-term exposure scenarios presented risks of concern to farmworkers who mix, load, or apply diazinon. See Diazinon IRED at 19-21.

     34.     EPA also concluded that diazinon uses posed "post-application" risks of concern to farmworkers who come into contact with diazinon residues on crops following application. EPA determined that up to 18-day "re-entry intervals" (period of time in which workers may not enter fields treated with diazinon) and 45-day "pre-harvest intervals" (period of time in which harvesting activities are prohibited following application) were needed to eliminate risks of concern resulting from post-application activities. Diazinon IRED at 22-23.

     35.     EPA found that diazinon uses resulted in risks of concern to birds, mammals, aquatic species, and threatened and endangered species. Diazinon IRED at 28-32. According to the agency, "[d]iazinon has caused widespread and repeated mortality of birds [and that m]ortality is likely to continue in the future if diazinon continues to be used on sites where birds

can be exposed." Diazinon IRED at 31. EPA likewise acknowledged that "[d]iazinon is highly toxic to bees and other beneficial insects on an acute contact basis," is "moderately toxic to very highly toxic to freshwater fish," and "is very highly toxic to aquatic invertebrates on an acute basis . . . ." Diazinon IRED at 26.

36. While EPA prescribed some mitigation to reduce farmworker and wildlife risks, in many cases the agency carved out exceptions to the mitigation for specific diazinon uses. For example, EPA cancelled all granular registrations of diazinon *except* for use on lettuce in California and Arizona and for two current local registrations held by Washington and Oregon for control of the cranberry girdler. IRED Facts at 3. Likewise, EPA eliminated aerial application for all uses *except* for one application per crop for lettuce. IRED Facts at 3. EPA similarly deleted foliar application on all vegetable and fruit crops *except* for leafhopper on honeydew melons in California and one application per crop for lettuce. IRED Facts at 3. And EPA required closed cabs for motorized ground equipment application *except* for applications to apples and lettuce. IRED Revision at 2.

37. EPA's primary justification for allowing diazinon risks of concern to persist, and for exempting certain uses from the general mitigation measures prescribed in the IRED, was its assertion that the benefits of diazinon to growers outweigh the risks from such uses. However, EPA's conclusion that diazinon uses provided important benefits to growers is not substantiated by the facts. For example, EPA conceded that only five percent of the honeydew melon crop is treated with diazinon. Diazinon IRED at 6. The low usage of diazinon indicates that honeydew growers have found efficacious alternatives to diazinon and that cancellation of the honeydew use would not significantly affect grower revenues. Yet EPA allowed diazinon use on honeydew to continue and, in the 2004 IRED Revision, extended the phase-out for foliar applications on honeydew melons indefinitely. IRED Revision at 1.

38. Indeed, EPA assessed benefits for only a limited number of crops—those with five percent or more of total acreage receiving diazinon treatments. Diazinon IRED at 42. Using this cut-off, EPA did not conduct a benefits assessment for diazinon use on apples. Diazinon

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    -12-

IRED at 42.  Nonetheless, EPA concluded that diazinon uses on apples are eligible for reregistration, Diazinon IRED at 42, and, in the 2004 Revision, exempted apples from the enclosed cab mitigation it prescribed for all other diazinon uses, IRED Revision at 1.

39.     EPA's failure to consider the benefits of many diazinon uses was compounded by the agency's failure to assess several important factors bearing on the risks that the pesticide poses to humans.  For example, EPA failed to consider diazinon exposures to children and bystanders that occur when the pesticide drifts from the fields into homes, schools, and playgrounds following application; EPA only considered child and bystander exposures from food and drinking water contamination.  See Diazinon IRED at 36-37.  Both FIFRA and the FFDCA require EPA to assess child and bystander exposures from pesticide drift; however, EPA did not examine such exposures under either FIFRA's "unreasonable adverse effects" standard or the FFDCA's "reasonable certainty of no harm" standard.

40.     EPA failed to consider many other critical factors bearing on diazinon's reregistration eligibility, including but not limited to (a) the risks to humans and wildlife from the diazinon degradates, which EPA acknowledged could pose additional risks to both humans and wildlife; (b) the risks to humans and wildlife resulting from the endocrine disrupting properties of diazinon; (c) the post-application risks to farmworkers from nut tree and cut flower uses of diazinon; (d) waterbody listings under section 303(d) of the Clean Water Act caused by diazinon contamination from agricultural sources; (e) the acute toxicity of diazinon to estuarine and marine fish and invertebrates; and (f) the sub-lethal effects of diazinon on fish.

41.     The Diazinon IRED was called "interim" because EPA still had to complete a cumulative risk assessment for all organophosphates and make appropriate adjustments in food tolerances in order to comply with the FQPA.  On July 31, 2006, upon completing its Organophosphate Cumulative Risk Assessment, EPA re-affirmed its reregistration eligibility decisions for diazinon without change.  It concluded that the Cumulative Risk Assessment compelled no changes in the Diazinon IRED and that the diazinon uses covered by the IRED continue to be eligible for reregistration.  EPA Memorandum Finalizing IREDs for

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -13-

Organophosphate Pesticides (July 31, 2006). In making this determination, EPA did not address or incorporate new data that had been submitted to the agency following completion of the IRED on the risks and benefits of diazinon.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
<u>Violation of FIFRA:</u>
<u>Failure to Consider All Factors Necessary to Evaluate "Unreasonable Adverse Effects"</u>
<u>From Reregistering Diazinon</u>

42. In order to register or reregister a pesticide use, EPA must determine that the use "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. §§ 136a(c)(5). FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide . . . ." <u>Id.</u> § 136(bb). In order to satisfy this standard, EPA must consider all relevant health, environmental, economic, and social risks and benefits of the pesticide use and determine that the benefits outweigh the risks. The pesticide registrant bears the burden of proving that the benefits of a pesticide use outweigh the risks.

43. In determining that diazinon uses are eligible for reregistration under FIFRA, and in maintaining the diazinon registrations, EPA failed to place the burden of proving registration eligibility on the pesticide registrants and failed to conduct a complete assessment of the risks and benefits of diazinon uses. The critical omissions in EPA's diazinon assessments include but are not limited to EPA's failure to consider and adequately assess: (a) risks to children and bystanders from diazinon that drifts into communities following application; (b) risks to humans and wildlife from the toxic degradates of diazinon; (c) risks to humans and wildlife from the endocrine disrupting properties of diazinon; (d) risks to estuarine and marine fish and invertebrates from diazinon runoff; (e) the sub-lethal effects of diazinon on wildlife; (f) surface waters listed as impaired due to diazinon contamination from agricultural sources; and (g) benefits of diazinon on crops such as apples for which less than five percent of total acreage

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -14-

receives diazinon treatments.

44.     Because EPA failed to consider and adequately assess many important factors bearing on the risks and benefits of diazinon, including but not limited to those listed above, EPA lacked a basis for determining that the benefits of diazinon uses outweigh the risks. By failing to put the burden on the registrants to prove reregistration eligibility and conduct a complete risk-benefit assessment that considers all important factors relevant to diazinon's reregistration eligibility, EPA's decision that diazinon is eligible for reregistration was arbitrary, capricious, and contrary to FIFRA.

SECOND CLAIM FOR RELIEF
Violation of FIFRA:
Failure to Rationally Balance Risks and Benefits of Diazinon Reregistration

45.     FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide . . . ." Id. § 136(bb). In order to satisfy this standard, EPA must consider all relevant health, environmental, economic, and social risks and benefits of the pesticide use and determine that the benefits outweigh the risks. The pesticide registrant bears the burden of proving that the benefits of a pesticide use outweigh the risks.

46.     Despite the flaws in EPA's diazinon risk and benefit assessments, EPA admitted that some diazinon uses pose substantial risks to humans and the environment and provide only marginal benefits to growers. EPA proffered no rationale for how these marginal benefits outweigh the substantial risks posed by diazinon. EPA's failure to articulate any rational connection between its risk and benefit findings and its ultimate decision that diazinon uses were eligible for reregistration was arbitrary, capricious, and contrary to FIFRA.

PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

A.     Adjudge and declare that EPA acted arbitrarily, capriciously, and contrary to

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF    -15-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  FIFRA in reregistering uses of diazinon;

2      B.    Order EPA to either cancel diazinon or make a new reregistration eligibility
3  decision for diazinon on an expeditious basis in which EPA: (1) makes unreasonable adverse
4  effects determinations based on full consideration and balancing of environmental, health,
5  economic, and social risks and benefits from diazinon uses, including all risks to children and
6  other bystanders; (2) reregisters a diazinon use only when the pesticide registrants have proved
7  that the health, environmental, economic, and social benefits outweigh the risks; and (3) ensures,
8  based on completed section 7(a)(2) consultations, that the reregistered diazinon uses will not
9  jeopardize the survival and recovery of threatened and endangered species or destroy or
10 adversely modify their critical habitat;

11     C.    Order interim protective measures to prevent harm to farmworkers, children, and
12 other bystanders while EPA makes new reregistration decisions for diazinon;

13     D.    Award plaintiffs UFW, PANNA, PCUN, Beyond Pesticides, Teamsters Local
14 890, FLOC, and Luis Garcia Lopez their reasonable expenses, costs, and disbursements,
15 associated with this litigation under the Equal Access to Justice Act, 28 U.S.C. § 2412;

16     E.    Award plaintiffs UFW, PANNA, PCUN, Beyond Pesticides, Teamsters Local
17 890, FLOC, and their counsel Earthjustice and Farmworker Justice only, their reasonable fees,
18 including attorneys' fees associated with this litigation, under the Equal Access to Justice Act,
19 28 U.S.C. § 2412;

20     F.    Grant plaintiffs such further and additional relief as the Court may deem just and
21 proper.

22     / / /
23     / / /
24     / / /
25     / / /
26     / / /
27     / / /
28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    -16-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Respectfully submitted this 28th day of July, 2008.

/s/ Gregory C. Loarie
GREGORY C. LOARIE (CSB #215859)
Earthjustice
426 - 17th Street, 5th Floor
Oakland, CA 94612
(510) 550-6725
(510) 550-6749 *[FAX]*
gloarie@earthjustice.org

*Local Counsel for Plaintiffs United Farm Workers, Pesticide Action Network North America, Pineros y Campesinos Unidos del Noroeste, Beyond Pesticides, Teamsters Local 890, and Farm Labor Organizing Committee, AFL-CIO*

JOSHUA OSBORNE-KLEIN (WSB #36736)
KRISTEN L. BOYLES (CSB #158450)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340
(206) 343-1526 *[FAX]*
josborne-klein@earthjustice.org
kboyles@earthjustice.org

SHELLEY DAVIS (CSB #84539)
VIRGINIA RUIZ (CSB #194986)
Farmworker Justice
1126 – 16th Street, N.W., Suite 270
Washington, D.C. 20036
(202) 293-5420
(202) 293-5427 *[FAX]*
sdavis@nclr.org
vruiz@nclr.org

*Attorneys for Plaintiffs United Farm Workers, Pesticide Action Network North America, Pineros y Campesinos Unidos del Noroeste, Beyond Pesticides, Teamsters Local 890, and Farm Labor Organizing Committee, AFL-CIO*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    -17-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

|   |   |
|---|---|
| 1 | MICHAEL MEUTER (CSB #161554) |
| 2 | JONATHAN GETTLEMAN (CSB #243560)<br>California Rural Legal Assistance, Inc. |
| 3 | 3 Williams Road<br>Salinas, CA 93905 |
| 4 | (831) 757-5221<br>(831) 757-6212 |
| 5 | mmeuter@crla.org<br>jgettleman@crla.org |

*Attorneys for Plaintiff Luis Garcia Lopez*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    -18-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*