Laurence A. Weiss (Bar No. 164638)
Laurence.Weiss@hellerehrman.com
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025-3506
Telephone: 650.324.7000
Facsimile: 650.324.0638

David B. Weinberg (D.C. Bar # 186247)
(Pending *pro hac vice*)
dweinberg@wileyrein.com
Eric Andreas (D.C. Bar # 462777)
eandreas@wileyrein.com
David E. Markert (D.C. Bar #502486)
dmarkert@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Attorneys for Intervenor-Defendant
Makhteshim Agan of North America, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| UNITED FARM WORKERS, et al., Plaintiffs, v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant. | Case No. C 08-03595 SBA<br>**NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br>Date: Tuesday, October 7, 2008<br>Time: 1:00 PM<br>Courtroom 3, 3rd Floor<br>The Honorable Saundra Brown Armstrong |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... i

NOTICE TO PLAINTIFFS, DEFENDANT, AND THEIR ATTORNEYS OF RECORD ..... iii

POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE ..... 1

I. STATEMENT OF THE ISSUES ..... 1

II. RELEVANT FACTS ..... 2

A. Diazinon ..... 2

B. Statutory Background And Regulatory Scheme ..... 3

1. FIFRA ..... 3

2. The ESA ..... 4

C. Plaintiffs' Action ..... 5

D. MANA ..... 6

III. ARGUMENT ..... 6

A. Intervention As Of Right Should Be Granted ..... 6

1. This Motion To Intervene Is Timely ..... 7

2. MANA Has Significantly Protectable Interests In This Case ..... 8

3. Disposition Of This Case May Affect MANA's Interests ..... 9

4. The Existing Parties Do Not Adequately Represent MANA's Interests ..... 10

B. Permissive Intervention Should Be Granted ..... 12

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## CASES


Cemex, Inc. v. County of Los Angeles,
92 F. A'ppx 457 (9th Cir. 2004) .......... 7

Dimond v. District of Columbia,
792 F.2d 179 (D.C. Cir. 1986) .......... 11

Forest Conservation Council v. United States Forest Service,
66 F.3d 1489 (9th Cir. 1995) .......... 8, 10, 11

Fund for Animals v. Norton,
322 F.3d 728 (D.C. Cir. 2003) .......... 10

Kootenai Tribe of Idaho v. Veneman,
313 F.3d 1094 (9th Cir. 2002) .......... 12

Nader v. Ray,
363 F. Supp. 946 (D.D.C. 1973) .......... 8

National Association of Home Builders v. Defenders of Wildlife,
127 S. Ct. 2518 (2007) .......... 4

Natural Resources Defense Council v. Costle,
561 F.2d 904 (D.C. Cir. 1977) .......... 10

Natural Resources Defense Council v. EPA,
99 F.R.D. 607 (D.D.C. 1983) .......... 8, 11

Northwest Forest Resource Council v. Glickman,
82 F.3d 825 (9th Cir. 1996) .......... 9

People for the Ethical Treatment of Animals v. Babbitt,
151 F.R.D. 6 (D.D.C. 1993) .......... 9

Sierra Club v. EPA,
995 F.2d 1478 (9th Cir. 1993) .......... 7, 8

Sierra Club v. Espy,
18 F.3d 1202 (5th Cir. 1994) .......... 7

Southwest Center for Biological Diversity v. Berg,
268 F.3d 810 (9th Cir. 2001) .......... 7, 10

Trbovich v. United Mine Workers of America,
404 U.S. 528 (1972) .......... 10

United States v. Alisal Water Corp.,
370 F.3d 915 (9th Cir. 2004) .......... 7, 8

United States v. Oregon,
745 F.2d 550 (9th Cir. 1984) .......... 7

**ADMINISTRATIVE & EXECUTIVE MATERIALS**

69 Fed. Reg. 26819 (May 14, 2004) .......... 3

**RULES & REGULATIONS**

40 C.F.R. § 152.50(b)(3) .......... iii

**FEDERAL STATUTES**

5 U.S.C. § 551 .......... 8

7 U.S.C. §§ 136-136y .......... iii

7 U.S.C. § 136 .......... 3

7 U.S.C. § 136a .......... 3

7 U.S.C. § 136a-1 .......... 1, 3

7 U.S.C. § 136d .......... 2

16 U.S.C. §§ 1531-44 .......... 4

16 U.S.C. § 1533 .......... 4

16 U.S.C. § 1536 .......... 1, 4, 5

**MISCELLANEOUS**

Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1916 (1972) .......... 7

Fed. R. Civ. P. 24(a) .......... iii, 6-8, 12

Fed. R. Civ. P. 24(b) .......... iii, 12

**NOTICE TO PLAINTIFFS, DEFENDANT, AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on Tuesday, October 7, 2008, at 1:00 PM, or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States Courthouse located at 1301 Clay Street, Third Floor, Oakland, California, Applicant Makhteshim Agan of North America, Inc. ("MANA") will and does hereby move the Court to grant it intervention under Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure.

By this motion, MANA seeks an Order from this Court granting it intervention as a defendant in this case. MANA has an absolute right to intervene as a defendant because it has substantial interests in diazinon, the pesticide that is the subject of this case, and those interests are not adequately represented by the existing parties. MANA holds EPA registrations pursuant to the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. §§ 136-136y ("FIFRA") for several agricultural products that are formulated with diazinon and is the authorized agent under FIFRA for Makhteshim Chemical Works, Ltd., the primary manufacturer of technical-grade diazinon in the United States. *See* 40 C.F.R. § 152.50(b)(3). Thus, MANA would be directly and adversely affected by a ruling in the Plaintiffs' favor that the Defendant, the United States Environmental Protection Agency, violated FIFRA and the Endangered Species Act in determining that diazinon was eligible for reregistration. For these same reasons, MANA also has a permissive right to intervene in this case.

On August 19, 2008, Counsel for MANA met and conferred with Counsel for Plaintiffs regarding the filing of this motion, and on August 19, 2008, Counsel for MANA met and conferred with Counsel for Defendant EPA regarding the filing of this motion. Counsel for Plaintiffs informed MANA that Plaintiffs do not oppose this motion, but declined MANA's request to stipulate to the motion being granted. Counsel for Defendant informed MANA that EPA does not oppose this motion, but declined MANA's request to stipulate to the motion being granted.

DATED: August 20, 2008

HELLER EHRMAN LLP

By: /s/

Laurence A. Weiss
Laurence.Weiss@hellerehrman.com
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025-3506
Telephone: 650.324.7000
Facsimile: 650.324.0638

David B. Weinberg (D.C. Bar # 186247)
(Pending *pro hac vice*)
dweinberg@wileyrein.com
Eric Andreas (D.C. Bar # 462777)
eandreas@wileyrein.com
David E. Markert (D.C. Bar #502486)
dmarkert@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Attorneys for Intervenor-Defendant
Makhteshim Agan of North America, Inc.

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE**

## I. STATEMENT OF THE ISSUES

The present action arises from the United States Environmental Protection Agency's ("EPA" or "the Agency") decision to continue to allow the reregistration of certain uses of the pesticide diazinon. EPA's decision initially was made as part of an Interim Reregistration Eligibility Decision ("IRED") for diazinon that was issued on July 31, 2002 and subsequently revised on May 13, 2004. The IRED was later converted to a final Reregistration Eligibility Decision ("RED") for diazinon that EPA issued on July 31, 2006.[1] IREDs and REDs are the end result of a lengthy reregistration process that EPA is required to undertake for all pesticides first registered before November 1, 1984. *See* Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") § 4, 7 U.S.C. § 136a-1.

EPA concluded in the RED for diazinon that there was sufficient information on the human health and ecological effects of the pesticide to support the continued use in agricultural settings of diazinon-containing products. Although the Agency identified some occupational and ecological risks from the agricultural use of diazinon, it found that these risks could be controlled through the implementation of mitigation measures and labeling changes. Also, EPA identified in the RED additional studies of diazinon's risks to human health and the environment that it required be conducted by the pesticide's registered manufacturers.

Plaintiffs here ask the Court to declare that EPA acted arbitrarily, capriciously, and in violation of FIFRA when it approved reregistration of diazinon for continued use in agricultural applications. Plaintiffs also ask the Court to issue an injunction that orders EPA to make a new reregistration eligibility decision for diazinon and to impose protective measures until a new reregistration eligibility decision is issued. Plaintiffs also ask the Court to declare that the Agency violated Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), by reregistering diazinon without first consulting the United States Fish and Wildlife Service

---

[1] The diazinon IRED and RED are available on EPA's website. *See* EPA, Pesticide Reregistration Status, http://www.epa.gov/pesticides/reregistration/status_page_d.htm (last visited Aug. 7, 2008).

("FWS") and the National Marine Fisheries Service ("NMFS") (collectively "the Services"). Plaintiffs thus seek an order that compels EPA to consult with the Services on the effects of diazinon and imposes interim protective measures until such consultations are complete.

Resolution of the Plaintiffs' claims will have a direct, immediate, and substantial impact on the ability of Makhteshim Agan of North America, Inc. ("MANA") to market and sell its diazinon products and on its investment in studies currently being performed for purposes of complying with the diazinon RED. Furthermore, if this Court were to require EPA to make a new reregistration eligibility decision for diazinon, MANA would be obliged to participate in that proceeding, and the end result could be either more burdensome restrictions on the uses of the MANA's diazinon-containing products or the initiation of proceedings to suspend or cancel those uses. *See* FIFRA § 6, 7 U.S.C. § 136d. Either of these outcomes would have a significant and adverse impact on the future sales of MANA's diazinon-containing products.

Thus, MANA requests that the Court determine that it may intervene in this action, either as of right or permissively, so that MANA may defend its diazinon registrations.

## II.   RELEVANT FACTS

### A.   Diazinon

Diazinon is an insecticide, acaricide, and nematicide that was discovered in 1952 and first registered for use in the United States in 1956. Until relatively recently, diazinon was one of the most widely used pesticides in the United States. However, during the reregistration process the diazinon registrants agreed to voluntarily cancel their registrations for residential uses of diazinon-containing products, which constituted the vast majority of all registered uses. Now, diazinon is registered for use only in agricultural settings. Consequently, the amount of diazinon used in the past few years has dropped precipitously.

Due to the historic widespread use of diazinon, its health and safety risks have been extensively examined and re-examined by numerous governmental regulatory bodies, including EPA. Millions of dollars have been spent in the past five decades on studies of the potential impact of diazinon-containing products on human health and the environment. These studies have repeatedly shown that diazinon is an extremely effective pesticide, the continued use of

which presents readily manageable risks.

**B. Statutory Background And Regulatory Scheme**

**1. FIFRA**

EPA regulates the distribution and sale of pesticide products pursuant to the authorities set forth in FIFRA. Under FIFRA, a company may lawfully distribute or sell only those pesticide products that have been "registered" for specific uses by EPA. 7 U.S.C. § 136a(a). For a pesticide to be registered, the EPA Administrator must determine, among other things, that it "will perform its intended function without unreasonable adverse effects on the environment." *Id.* § 136a(c)(5)(C).

In 1988, Congress amended FIFRA to require the reregistration by EPA of all products containing active ingredients that had been registered prior to November 1, 1984. *Id.* § 136a-1(a). Those amendments established a five-phase process. *Id.* § 136a-1(b). In Phase One, the Agency was to determine and list which pesticides are to be reregistered. Phase Two required EPA to identify the missing or inadequate data supporting those registrations. During Phase Three, the registrants of the listed pesticides were required to submit summaries of existing studies, flag studies indicating adverse effects, and commit to submit additional data as needed. EPA reviewed these submissions in Phase Four and required registrants to meet any unfulfilled data requirements. Last, in Phase Five, EPA performed a detailed review of all data submitted for each pesticide and determined whether that pesticide could be used without unreasonable adverse effects on people or the environment, taking into account the costs and benefits of the pesticide's uses. *See id.* §§ 136(bb), 136a(c)(5)(C), 136a-1(g)(2)(C).

The reregistration process provides extensive opportunities for public participation. EPA procedures are designed to promote robust public involvement while making timely pesticide regulatory decisions. *See* 69 Fed. Reg. 26819 (May 14, 2004). As it has implemented this reregistration program, EPA has documented its evaluations in IREDs or REDs. In either case, when the Agency releases a reregistration decision it typically accepts public comment on that document. Pesticides that are determined by EPA to meet current scientific and regulatory standards as a result of its review of old data and newly submitted data may be declared "eligible"

for reregistration. Many, if not most, reregistration eligibility decisions are conditioned on the implementation of risk reduction requirements such as application restrictions or use of additional personal protective equipment.

As noted above, the IRED for diazinon was issued in 2002 and revised in 2004. In the IRED, EPA determined that diazinon was eligible for reregistration for agricultural uses provided mitigation measures and labeling changes were implemented.[2] EPA also made its reregistration determination contingent upon an assessment of the cumulative risk posed by all organophosphate pesticides (of which diazinon is an example). EPA completed that assessment in July 2006. Shortly thereafter, the Agency converted the IRED, as revised, into the final RED for diazinon, concluding that the cumulative risks did not require reconsideration of its prior reregistration decision.

**2. The ESA**

The ESA, 16 U.S.C. §§ 1531-44, was enacted in 1973 and has been amended on several occasions. Its goal is to protect and conserve endangered and threatened species. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2528 (2007). The Act protects endangered and threatened species that have been listed ("listed species") pursuant to the rulemaking process described in Section 4 of the ESA. 16 U.S.C. § 1533. As relevant here, the ESA requires federal agencies to consult with the Services to ensure that a proposed action will not jeopardize the continued existence of a listed species. Specifically, Section 7(a)(2) of the ESA provides:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any . . . [listed] species or result in the destruction or adverse modification of [designated critical] habitat of such species.

16 U.S.C. § 1536(a)(2).

EPA consulted with the Services in 1989 on the potential effects on listed species of the continued use of diazinon. IRED at 31. The Agency also is presently engaged in a Proactive

2 Prior to the issuance of the diazinon IRED, the technical registrants entered into an agreement with EPA to voluntarily phase out and cancel all indoor and outdoor residential uses of diazinon. The IRED for diazinon, therefore, does not analyze the risks for those uses that were phased out and/or canceled.

Conservation Review with the Services under Section 7(a)(1) of the ESA, 16 U.S.C. § 1536(a)(1), and has stated that it would "reassess the potential effects of diazinon use to [listed species] . . . [and would re]consider any regulatory changes recommended in the IRED" upon completion of that review. IRED at 32. Until then, it is EPA's intent that the risk mitigation measures specified in the IRED serve as "interim protection measures." *Id*.

Pursuant to Section 7 of the ESA, EPA also has recently consulted with the Services on the potential impacts of diazinon use on listed and endangered Pacific salmonoid species. The results of this consultation are detailed in a draft biological opinion that was released by the NMFS. *See* National Marine Fisheries Service Endangered Species Act Section 7 Consultation, Draft Biological Opinion, Environmental Protection Agency Registration of Pesticides Containing Chlorpyrifos, Diazinon, and Malathion (July 31, 2008).

**C. Plaintiffs' Action**

Plaintiffs' complaint, filed on July 28, 2008, and subsequently amended on August 4, 2008, seeks judicial review of EPA's decision to reregister diazinon. Specifically, the Plaintiffs' challenge is based on the following assertions:

In Count I of the complaint, the Plaintiffs allege that the decision to reregister diazinon was arbitrary, capricious, and contrary to FIFRA because "EPA failed to place the burden of proving registration eligibility on the pesticide registrants and failed to conduct a complete assessment of the risks and benefits of diazinon uses." Am. Compl. at ¶ 50.

Count II of the complaint alleges that, notwithstanding the Agency's failure to conduct a complete assessment of the risks and benefits of diazinon's uses, the decision to reregister diazinon was arbitrary, capricious, and contrary to FIFRA because EPA proffered no rationale for how diazinon's benefits outweigh its risks. Am. Compl. at ¶¶ 52-53.

Count III alleges that EPA violated the ESA by reregistering diazinon without completing the consultations with the Services required by Section 7(a)(2) of the ESA. Am. Compl. at ¶ 56.

In the Prayer for Relief, the Plaintiffs seek, *inter alia*: (i) a declaratory judgment that EPA violated FIFRA and the ESA in reregistering diazinon; (ii) an order requiring EPA to make a new reregistration decision that is based on a determination as to whether the benefits of the remaining

diazinon uses outweigh the risks and also on a consultation with the Services pursuant to Section 7(a)(2) of the ESA; and (iii) interim protective measures.

**D. MANA**

MANA is an affiliate of Makhteshim Chemical Works, Ltd. ("MCW"), which is today the world's primary manufacturer of technical-grade diazinon for pesticide products. Declaration of Mr. Ephraim Gur ("Gur Decl.") ¶¶ 1, 4 (attached as Ex. 1). MANA acts as MCW's agent before EPA on all diazinon-related matters and also coordinates the domestic distribution and sale of MCW's technical-grade diazinon. *Id.* ¶ 1. MANA also produces and sells several end-use products containing diazinon for which it holds registrations. *Id.* ¶ 5. These products are used by farmers in the United States to defend against a variety of soil insects and pests of fruit, vegetables, and forage and field crops. *Id.* ¶ 3.

MANA has been an active participant in the diazinon reregistration process. In the past ten years, MANA and MCW have invested millions of dollars in research and testing to support diazinon's continued registration, and they continually update that research with data generated using the newest testing technologies. *Id.* ¶ 7. MANA also operates product stewardship programs that support and advise customers on application techniques that minimize risks to people or the environment from organophosphate pesticides, such as diazinon. *Id.* ¶ 8.

MANA has strong interests in the property and transactions that are the subject of this case. Those interests include MANA's registrations for diazinon, from which it derives economic benefits. Moreover, as the owner of numerous other pesticide registrations that may be affected by the decision in this case, MANA also has an interest in defending the reregistration process itself against the Plaintiffs' attacks.

**III. ARGUMENT**

**A. Intervention As Of Right Should Be Granted**

Under Federal Rule of Civil Procedure 24(a)(2), a third party is entitled to intervene as of right in a case if four conditions are met: (1) the motion for intervention is timely; (2) the third party claims an identifiable, "significantly protectable interest" relating to the property or transaction that is the subject of the action; (3) disposition of the action may impair or impede the

third party's ability to protect that interest; and (4) the existing parties to the action may inadequately represent the third party's interest. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). This four-part test is to be construed "liberally in favor of applicants for intervention." *Cemex, Inc. v. County of Los Angeles*, 92 F. A'ppx 457, 459 (9th Cir. 2004); *see also Berg*, 268 F.3d at 818. MANA readily satisfies all four conditions and should be granted intervention as of right in this case.

**1. This Motion To Intervene Is Timely**

In determining whether a motion is timely, District Courts in the Ninth Circuit are to look to the following three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Of the three factors, the issue of prejudice to the original parties is generally considered the most important. *See United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (quoting Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1916 (1972)); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ("The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties.").

The instant case is at a very early stage of litigation. The Plaintiffs filed their initial complaint on July 28, 2008, and an amended complaint on August 4, 2008. EPA has yet to file an answer in response to either. In addition, the first Case Management Conference is not scheduled until November 5, 2008, more than two months after the date of this motion. Thus, the submission of this motion to intervene is timely.

Moreover, under these circumstances, neither the Plaintiffs nor EPA will be prejudiced by the timing of MANA's motion to intervene. *See Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (intervention timely when motion made at outset of litigation). Thus, the first condition for intervention as of right is met.

**2. MANA Has Significantly Protectable Interests In This Case**

The second condition for intervention as of right is that the proposed intervenor claim a significantly protectable interest relating to the property or subject of the action. A proposed intervenor claims a significantly protectable interest within the meaning of Rule 24(a)(2) if the interest asserted is protected by law and related to the plaintiff's claims. *Alisal Water Corp.*, 370 F.3d at 919. An economic interest may support intervention as of right if it is concrete and related to the underlying subject matter of the case. *See id.* at 919; *see also Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995) (the interest requirement assists in "dispos[ing] of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process").

This condition is satisfied here. MANA holds EPA registrations that allow it to distribute and sell diazinon products in the United States. Gur Decl. ¶¶ 1, 4. Under the Administrative Procedure Act, MANA's registrations are considered licenses that are protected by law. 5 U.S.C. § 551(8) ("license" includes "the whole or a part of an agency permit, certificate, approval, registration . . . or other form of permission"). As such, MANA's registrations qualify as a significantly protectable property interest for purposes of determining its right to intervene in this action. *See Natural Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) ("Plaintiffs' complaint challenges procedures pursuant to which EPA reached preliminary decisions that the intervenors' pesticide products merited continued registration. If plaintiffs succeed in this case, these regulatory decisions . . . will be set aside. Thus, the intervenors can be said to have a substantial and direct interest in the subject of this litigation."); *cf. Sierra Club v. EPA*, 995 F.2d 1478, 1485-86 (9th Cir. 1993) (ruling that holder of discharge permits under the Clean Water Act had a "protectable" interest and could intervene as of right where the litigation could result in modifications to those permits); *Nader v. Ray*, 363 F. Supp. 946, 953 (D.D.C. 1973) (granting intervention as of right to holders of nuclear facility operating licenses issued by the Atomic Energy Commission where the licenses would have been revoked or suspended if the plaintiffs prevailed).

MANA also has a further economic interest in this case that supports granting it intervention as of right. MANA enjoys economic benefits as one of only a handful of companies that hold registrations to distribute and sell end-use products containing diazinon for the agricultural market. Gur Decl. ¶ 5. If the Plaintiffs prevail in this case, those economic benefits could be lessened or even eliminated. Gur Decl. ¶¶ 13-14. This interest, which is directly related to the subject of this action, is clearly sufficient to support intervention as of right. *See, e.g.*, *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993).

Third, MANA participated actively in the five-phase reregistration process that culminated in the diazinon RED. Gur Decl. ¶ 10. The Ninth Circuit has frequently approved intervention by entities that were "directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837-38 (9th Cir. 1996). The rationale for this practice is that these entities acquire a significantly protectable interest through their extensive involvement in the regulatory process. This rationale extends to MANA, and the second criteria for intervention as of right thus is met.

**3. Disposition Of This Case May Affect MANA's Interests**

It is unquestionable that disposition of this action may, as a practical matter, impair or impede MANA's ability to protect its interests in diazinon. If the Plaintiffs obtain the re-review of the diazinon RED that they seek, substantial burdens would be placed on MANA. Gur Decl. ¶ 13. Uncertainty about the future availability of diazinon products likely will lead potential customers to switch to substitutes. *Id*. MANA also would be forced to incur additional cost to defend the continued registration of diazinon. *Id*.

Furthermore, the end result of EPA's re-review of the RED could be the imposition of additional restrictions on the distribution or use of diazinon-containing products, or even a total ban on the sale of such products. *Id*. ¶ 14. Needless to say, either result would impair the value of MANA's registrations, cause substantial sales losses, and destroy the value of much of MANA's investment in the studies that enabled it to obtain and maintain its registrations. *Id*. Alternatively, EPA could reregister diazinon on the condition that MANA conduct even more

studies on the pesticide's safety. *Id*. Depending on the number and types of studies EPA required, the cost of meeting such a condition on reregistration may be so great that MANA would have no choice but to cancel or narrow its registrations. *Id*.

In short, the disposition of this action will "as a practical matter impair or impede" MANA's ability to protect its interests in diazinon. Therefore, the third element of the Ninth Circuit's four-part test for intervention as of right is satisfied.

**4. The Existing Parties Do Not Adequately Represent MANA's Interests**

The final condition for intervention as of right is that the representation of a proposed intervenor's interests by the existing parties "may be" inadequate. The Supreme Court has stated that the burden of making a showing of inadequacy should be treated as "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).

The courts have recognized that governmental representation of the interests of private parties is often inadequate. Governmental agencies have a broad responsibility to represent the public interest, whereas private companies often have a more narrow and "parochial" financial interest not shared by the public at large. *See, e.g.*, *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995); *Fund for Animals v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

Moreover, MANA routinely conducts research on the pesticides it registers and manufactures and thus has special expertise that makes it uniquely able to both defend diazinon's safety and accurately delineate the pesticide's likely effects on human health and the environment. Gur Decl. ¶ 11. Furthermore, MANA has experience and knowledge in the complex business of supplying diazinon products that EPA does not have. *Id*. ¶ 1; *see Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). MANA thus "can reasonably be expected to contribute to the informed resolutions of these [technical and complex] questions when, and if, they arise before the District Court," and its participation in defense of the diazinon RED will "serve as a vigorous and helpful supplement to EPA's defense." *Costle*, 561 F.2d at 912-13.

In addition, while MANA supports the diazinon RED, its interest in diazinon is different from that of EPA, and thus could lead MANA to take different positions from the Agency in litigation. MANA has focused financial interests in defending the diazinon RED. In contrast, EPA would face a potential conflict of interest were it to represent both the general interests of U.S. citizens and the financial interests of MANA. The courts have found this potential for conflict sufficient to meet the "minimal" burden of demonstrating inadequacy of representation. *See, e.g.*, *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (finding proposed intervenors satisfied the minimal showing required for inadequacy of representation because, in part, "the government must present the broad public interest, not just the economic concerns of the [proposed intervenors]"); *Dimond v. District of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986).

Indeed, in the particular context of pesticides regulation, the inadequacy standard is met even in cases where EPA and pesticide manufacturers appear to have interests that are directly aligned. *See Natural Res. Def. Council v. EPA*, 99 F.R.D. 607, 610 (D.D.C. 1983) (concerning regulatory reform measures for pesticides). This is because EPA's broader goal in challenges to its pesticides regulations is "defending [the] policies and procedures that it utilizes in regulating many potential harmful substances . . . ," while the manufacturer would have "interests [that] are more narrowly focused on proceedings relating to the particular pesticide [it] manufacture[s]" and thus will wish to maximize its opportunities to prove that its products are safe. *Id.* Furthermore, a time may come in this action when the interests of EPA and MANA diverge, and any purported EPA representation of MANA's interests would become inadequate. *See id.* For example, EPA may desire to reach a settlement with the Plaintiffs that would severely restrict diazinon's uses or even phase the pesticide out. MANA may not share the same goals.

For the foregoing reasons, MANA cannot rely on EPA to adequately protect its interests. Therefore, the fourth criterion for intervention as of right is met, and this Court should grant MANA's motion.

**B. Permissive Intervention Should Be Granted**

Alternatively, MANA should be granted permissive intervention. Federal Rule of Civil Procedure 24(b)(2) sets forth the standard that governs permissive intervention. Under Rule 24(b)(2), a third party seeking to intervene permissively must show: (1) that its application is timely and (2) that its claim or defense and the main action have a question of law or fact in common. The Rule differs from Rule 24(a)(2) in that a "significant protectable interest" is not required for permissive intervention, nor is there a requirement that the proposed intervenor have a "direct personal or pecuniary interest" in the case. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (concerning attempt to intervene in two actions challenging United States Forest Service's roadless area conservation rule).

MANA's application for intervention meets Rule 24(b)(2)'s standard. As explained above, MANA's motion to intervene is timely and will not result in any prejudice to the existing parties. Moreover, MANA is obviously affected by litigation that could result in significant changes to, or cancellation of, pesticide registrations that it holds. Also, as is clear from MANA's proposed answer, MANA raises many questions of law and fact in its defense that also are material to the main action.

In *Kootenai Tribe*, the Ninth Circuit held that private environmental groups lacked the significant protectable interest necessary to intervene as of right. *Id.* at 1108. However, the Court affirmed the district court's grant of permissive intervention, agreeing that "the magnitude of [the] case is such that both Applicants' intervention will contribute to the equitable resolution of [the] case." *Id.* at 1111. This case also concerns issues of large magnitude. Diazinon is a popular pesticide that is used on a wide variety of agricultural crops. Am. Compl. ¶ 31. Moreover, MANA generates substantial revenue from diazinon sales. Thus, the outcome of this case has potentially significant ramifications for the U.S. agricultural economy and for MANA. Consequently, MANA should be allowed to participate in this case.

**IV. CONCLUSION**

For the foregoing reasons, MANA respectfully requests that its Motion to Intervene be granted.

DATED: August 20, 2008

HELLER EHRMAN LLP

By: /s/

Laurence A. Weiss
Laurence.Weiss@hellerehrman.com
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025-3506
Telephone: 650.324.7000
Facsimile: 650.324.0638

David B. Weinberg (D.C. Bar # 186247)
(Pending *pro hac vice*)
dweinberg@wileyrein.com
Eric Andreas (D.C. Bar # 462777)
eandreas@wileyrein.com
David E. Markert (D.C. Bar #502486)
dmarkert@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202.719.7000
Facsimile: 202.719.7049

Attorneys for Intervenor-Defendant
Makhteshim Agan of North America, Inc.

12888705.3

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED FARM WORKERS, et al., Plaintiffs, v. UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant. | Case No. C 08-03595 SBA **[PROPOSED] ORDER** |

THIS MATTER having come before the Court upon the Motion of Makhteshim Agan of North America, Inc. ("MANA") to Intervene as Party Defendant ("Motion"), the Court having considered the parties' submissions related thereto, and it appearing that good cause exists for this order, and it also appearing that the standard for intervention as of right, Federal Rule of Civil Procedure 24(a)(2), is met in that (1) MANA's motion is timely, (2) MANA claims an identifiable, significantly protectable interest in diazinon – the pesticide that is the subject of this action, (3) disposition of this action may impair or impede MANA's ability to protect that interest, and (4) neither Plaintiffs nor Defendant adequately represent MANA's interest in diazinon, now, therefore

IT IS HEREBY ORDERED that the Motion is GRANTED and the clerk is directed to file the proposed Answer.

DATED this _____ day of _____, 2008.

________________________________
SAUNDRA BROWN ARMSTRONG
United States District Judge