UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY,<br><br>            Defendant. | Case No. C 08-03595 SBA<br><br>**DECLARATION OF EPHRAIM GUR** |

I, Ephraim Gur, declare as follows:

1.  I am employed by Makhteshim Agan of North America, Inc. ("MANA"), a Delaware corporation, as Vice President of Regulatory and Scientific Affairs. MANA is an affiliate of Makhteshim Chemical Works, Ltd. ("MCW"), an Israeli corporation. Pursuant to 40 C.F.R. § 152.50, MANA is authorized to act on MCW's behalf on all pesticide registration matters before the United States Environmental Protection Agency ("EPA"). MANA also coordinates the domestic distribution and sale of MCW's technical-grade diazinon and itself distributes diazinon products throughout the United States.

2.  One of my roles at MANA involves coordination of MANA and MCW's interactions with EPA with regard to pesticides containing the active ingredient diazinon. I have been working on regulatory issues related to diazinon, including that chemical's reregistration, since 1993. All statements in this declaration are based on my personal knowledge.

3.  Diazinon is an insecticide, acaricide, and nematicide that is used by farmers in the United States to defend against a variety of soil insects and pests on fruit, vegetables, and forage and field crops. It was discovered in 1952 and first registered for use in the United States in 1956. In 2000, the diazinon registrants, including MCW, agreed to voluntarily cancel their registrations for residential uses of diazinon-containing products, which constituted the majority

1  of all registered uses. As a result, the annual domestic usage of diazinon has dropped
2  considerably in the last decade.

3      4.    MCW today is the sole manufacturer of the technical-grade diazinon that is used in domestic pesticide products in the United States, and holds EPA registration nos. 11678-61 and 11678-63 for its technical products. The United States Geological Service estimates that the domestic average annual agricultural use of diazinon from 1999 through 2004 was approximately 640 thousand pounds. Crops which constitute the majority of diazinon use in the United States include cranberries, almonds, plums and prunes, peaches, and spinach.

     5.    MANA holds the following registrations issued by EPA for end-use products containing diazinon:

| Registration No. | Product Name |
| --- | --- |
| 66222-9 | Diazinon AG 500 |
| 66222-10 | Diazol 50WSB |
| 66222-103 | Diazol AG600 WBC |

     6.    MCW holds the following registrations issued by EPA for technical-grade diazinon:

| Registration No. | Product Name |
| --- | --- |
| 11678-61 | Diazol Diazinon Technical Stabilized AG |
| 11678-63 | Diazol (Diazinon) Stabilized Oil Concentrate AG |

     7.    Diazinon's health and safety risks have been extensively examined and re-examined by numerous governmental regulatory bodies, including EPA. Millions of dollars have been spent in the past five decades on numerous studies of the potential impact of diazinon-containing products on human health and the environment. In the past ten years, MANA and MCW have invested millions of dollars in research and testing to support EPA's determination of safety, and they continually update that research with data generated using the newest testing technologies.

GUR DECLARATION
C 08-03595 SBA    - 2 -

8. MANA operates an exceptional product stewardship program in the United States that supports and advises customers on application techniques that minimize risks to people or the environment from diazinon.

9. EPA completed a comprehensive review of diazinon's safety in July 2002. At that time, the Agency issued an Interim Reregistration Eligibility Decision ("IRED") for the chemical. EPA revised the diazinon IRED in May 2004. EPA made its reregistration determination contingent upon an assessment of the cumulative risk posed by all organophosphate pesticides – a group of chemically-related pesticides to which diazinon belongs. That assessment was completed by EPA in July 2006. Shortly thereafter, the Agency finalized the IRED for diazinon. It concluded that the cumulative risk posed by all organophosphate pesticides did not require reconsideration of the diazinon IRED, and issued a final Reregistration Eligibility Document ("RED"). In the IRED, EPA determined that diazinon was eligible for reregistration for agricultural uses.

10. MANA and MCW were active participants in the reregistration process that culminated in the 2002 IRED and 2006 RED and filed extensive comments and data in support of their registrations.

11. EPA's participation in this lawsuit does not protect MANA and MCW's interests. In general, MANA and MCW find themselves in an adversarial relationship with EPA. EPA lacks the focused scientific and financial interests that MANA and MCW have in defending the diazinon IRED. Nor does the Agency have MANA and MCW's experience and knowledge in the complex business of supplying diazinon products. Moreover, MANA and MCW routinely conduct extensive research on the pesticides they manufacture and thus have special expertise that makes them uniquely able to both defend diazinon's safety and accurately delineate the pesticide's likely effects on human health and the environment. In short, MANA and MCW have different interests that could lead them to take different positions from EPA on important issues raised by this litigation, including the issue of whether settlement of this case without adjudication is appropriate.

GUR DECLARATION
C 08-03595 SBA   - 3 -

12. MANA and MCW generate significant revenue from the sale and distribution of diazinon products, and by virtue of their defense activities and product stewardship program have developed a very favorable reputation among their customers and others in the agricultural business. If Plaintiffs prevail in this case, MANA and MCW's diazinon sales are likely to be reduced (or even eliminated), and their customers are likely to view the companies negatively for failing to adequately defend their products.

13. MANA and MCW will face substantial financial burdens if Plaintiffs obtain the re-review of the diazinon IRED that they seek. Uncertainty about the future availability of diazinon products likely will lead some of MANA and MCW's diazinon customers to switch to substitutes offered by other companies. MANA and MCW also would be forced to incur additional costs to defend diazinon's safety.

14. The value of MANA and MCW's registrations for diazinon products would be significantly reduced should Plaintiffs prevail. If EPA imposes additional restrictions on the distribution or use of diazinon-containing products, or even a total ban on the sale of such products, following a re-review of the July 2002 IRED, much of MANA and MCW's investment in the studies that enabled them to maintain their registrations would be rendered useless. Moreover, if EPA were to reregister diazinon on the condition that MANA and MCW conduct more studies on the pesticide's safety, the cost of meeting such a condition may be so great that the companies would have no choice but to cancel or narrow their registrations.

///
///
///
///
///
///
///
///
///

GUR DECLARATION
C 08-03595 SBA   - 4 -

1 | I declare, under penalty of perjury pursuant to 18 U.S.C. § 1546, that the foregoing is true and
2 | correct and that I executed this declaration on August 11, 2008 in Washington, D.C.

                                              _____
                                              Ephraim Gur

GUR DECLARATION
C 08-03595 SBA    - 5 -